**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Societe Civile Succession Richard Guino, | No. CV 06-01540-PHX-NVW |
| Plaintiff, | **ORDER** |
| vs. | |
| International Foundation for Anticancer Drug Discovery, and Arizona corporation; Deborah Lindquist; Marcia Karen Horn, | |
| Defendants. | |

This case poses the question of whether the Copyright Act of 1976 authorizes the impoundment of infringing property innocently purchased by a non-infringing person. The Court holds that, like the Copyright Act of 1909, the 1976 Act does not provide such a remedy.

**I.     Background**

Plaintiff Societe Civile Succession Richard Guino ("Societe") is a French trust formed to preserve the rights of the Guino family in a set of bronze sculptures created in the early 1900s by Richard Guino and Pierre-Auguste Renoir. Defendants are the International Foundation for Anticancer Drug Discovery ("International Foundation"), an Arizona corporation; Marcia Karen Horn ("Horn"), an Arizona resident and the President and Chief Executive Officer of International Foundation; and Arizona resident Deborah Lindquist ("Lindquist").

In October 2003, International Foundation held a "Jewels of the Sea" ball to raise money for its anti-cancer programs. International Foundation permitted Beseder, Inc., a local art gallery, to display and sell several replicas of the Guino-Renoir sculptures at the event. Lindquist, who was in attendance, purchased a replica of a work entitled "La Laveuse." Lindquist was unaware that Beseder, Inc., lacked authorization from Plaintiff to display or sell the sculpture when she made her purchase.

Plaintiff alleges that it obtained a valid copyright for "La Laveuse" on June 11, 1984, and holds the exclusive rights to its replicas. On this basis, it argues that International Foundation's unauthorized sale of the work in 2003 constitutes contributory infringement under the Copyright Act of 1976 (Count I). Plaintiff further alleges vicarious infringement against Defendant Horn on the theory that she had the right and ability to supervise International Foundation's sale of "La Laveuse," and received direct financial benefit from that transaction (Count II). Plaintiff does not allege that Defendant Lindquist is liable for infringement. As remedies, Plaintiff seeks actual damages, lost profits, statutory damages, attorneys' fees, and, in Count III, the impoundment of the infringing sculpture. A separate order has addressed Defendants' Motion to dismiss Counts I and II. This order addresses the Motion to dismiss Count III, impoundment, for failure to state a claim upon which relief may be granted.

**II.     Standard of Review.**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (citations and internal quotation marks omitted). When analyzing a complaint for failure to state a claim, all factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504 (9th Cir. 1994).

**III.    The Copyright Act of 1976 does not authorize the impoundment of infringing property purchased by a non-infringing person.**

Defendant Deborah Lindquist argues that the request for impoundment under Count III should be dismissed because Plaintiff has not alleged that Defendant Lindquist infringed any copyrights by purchasing or possessing "La Laveuse," and 17 U.S.C. § 503 does not permit the impoundment of infringing property once it has been purchased by an innocent third party. The issue hinges on the meaning of 17 U.S.C. § 503(a).

Before the passage of the Copyright Act of 1976, a copyright holder could not obtain the impoundment of infringing articles possessed by a non-infringing purchaser. Section 101(c) of the Copyright Act of 1909 provided:

> If any person shall infringe the copyright in any work protected under the copyright law of the United States such person shall be liable . . . .
>
> (c) To deliver up on oath, to be impounded during the pendency of the action, upon such terms and conditions as the court may prescribe, all articles alleged to infringe a copyright.

17 U.S.C. § 101(c) (1970) (amended 1976). The words "such person" were interpreted to permit the impoundment of an infringing work only when it was possessed by a defendant who had himself infringed the plaintiff's copyright. *See Foreign & Domestic Corp. v. Licht*, 196 F.2d 627, 629 (2nd Cir. 1952) (finding impoundment improper when sought against a purchaser of copyrighted material because the "remedy of forfeiture and destruction is given only against an infringer" and "one does not infringe a copyright by buying an infringing copy" of a work); *Jewelers' Circular Pub. Co. v. Keystone Pub. Co.*, 274 F. 932, 936 (S.D.N.Y. 1921) (holding that impoundment could not interrupt a bailee's possession because, under the 1909 Act, the remedy was "expressly limited to infringers"); *Matenciot, Inc. v. Dash, Inc.*, 422 F. Supp. 1199, 1203 (S.D.N.Y. 1976) (describing an impoundment order concerning items in the infringer's "possession or control"); 4 Melville B. Nimmer &

1 David Nimmer, Nimmer on Copyright § 14.07, at 14-160 (2006) ("Under the 1909 Act,
2 impoundment and destruction were applicable only against an infringer.").[1]

3     Principles of equity were occasionally referenced in support of this interpretation. In *Jewelers' Circular*, for example, a writ of seizure was denied with regard to infringing books that the defendant bookstore had already lent to its customers. The result was primarily grounded in the language of § 101 of the 1909 Act. However, it was also noted that seizure of the books would have been inequitable as both "extremely disastrous" to the defendant's business and unhelpful to the plaintiff. 274 F. at 937.

---

[1] The United States Supreme Court Copyright Practice Rules, promulgated pursuant to § 25(e) of the Copyright Act of 1909, Pub. L. No. 60-349, 35 Stat. 1075, 1082, established procedural rules governing the remedy of impoundment. However, the Rules are silent on the issue of whether impoundment may be imposed against a non-infringing purchaser of infringing works. *See* Copyright Practice R. 3-13. Additionally, although the Rules were never explicitly abrogated by the 1976 Act, *see Warner Bros., Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1124 (2nd Cir. 1989), there is some question as to their continuing validity, for they have been widely criticized as constitutionally infirm and inconsistent with both § 503 and Federal Rule of Civil Procedure 65. *See, e.g.*, *Paramount Pictures Corp. v. Doe*, 821 F. Supp. 82, 87 (E.D.N.Y. 1993). Rather than apply the Rules, which require impoundment if the plaintiff files with the court clerk an affidavit and surety bond, a substantial body of authority orders impoundment only after it is deemed proper under the standards governing preliminary injunctive relief. *See, e.g.*, *Pearson v. Quickturn Design Sys.*, 1998 U.S. Dist. LEXIS 22572, at *9-13 (N.D. Cal. Jan. 23, 1998); *Cybermedia, Inc. v. Symantec Corp.*, 19 F. Supp. 2d 1070, 1073, 1080-81 (N.D. Cal. 1998); *Van Deurzen & Assocs. v. Sanders*, 1991 U.S. Dist. LEXIS 12884, at *2 (D. Kan. Aug. 20, 1991).

Although sparse,[2] the legislative history also supported the view that the old § 101(c) did not authorize the impoundment of infringing items purchased by non-infringing parties. Congressional analysis of the statute suggested that impoundment would target only items possessed by infringers. *See, e.g.*, H.R. Rep. No. 60-2222, at 16 (1909) (explaining how the remedy of impoundment is "necessary in dealing with infringers"). Motivating this approach, it seems, was the view that impoundment is a severe remedy that is only appropriate in limited circumstances. *See, e.g.*, *Revision of Copyright Laws: Hearing Before the House and Senate Comm. on Patents*, 60th Cong. 166, 169 (1908) (statement of Albert H. Walker); *Copyright Hearings: Arguments Before the Senate and House Comm. on Patents on S. 6330 and H.R. 19853*, 59th Cong. 146 (1906) (statement of Ansley Wilcox, Esq.).[3]

Subsequent congressional examinations of the copyright laws also reflected an understanding that impoundment is a remedy that applies only to infringers. *See, e.g.*,

---

[2] Prior to the passage of the 1909 Act, there had been little debate over the proper scope of the remedy. Multiple bills proposed identical language on the issue, and the 1909 Act adopted that language verbatim. *Compare* H.R. 28192, 60th Cong. § 25(c) (2nd Sess. 1909) (providing that an infringing party "shall be liable . . . [t]o deliver up on oath to be impounded during the pendency of the action, upon such terms and conditions as the court may prescribe, all articles alleged to infringe a copyright"); S. 8190, 59th Cong. § 19(c) (2nd Sess. 1907) (same); H.R. 25133, 59th Cong. § 20(c) (2nd Sess. 1907) (same); H.R. 243, 60th Cong. § 28(d) (1st Sess. 1907) (same) *and* S. 6330, 59th Cong. § 23(c) (1st Sess. 1906) (same) *with* 17 U.S.C. § 101(c) (1970) (amended 1976). It is therefore unsurprising that the precise issue of whether impoundment may be imposed against a non-infringing party received no attention during the Senate and House of Representatives hearings leading up to the 1909 Act. To the extent that the impoundment statute even raised concerns, they involved issues such as whether the remedy should be required upon a plaintiff's mere allegation of infringement, *see Revision of Copyright Laws: Hearing Before the Senate and House Comm. on Patents*, 60th Cong. 169 (1908) (statement of Sen. F.B. Brandegee, Member, Senate Comm. on Patents), and whether courts should require security to protect innocent defendants from the risk of harassment, *see Copyright Hearings: Arguments Before the Senate and House Comm. on Patents on S. 6330 and H.R. 19853*, 59th Cong. 146 (1906) (statement of Ansley Wilcox, Esq.).

[3] This sentiment remained in the years leading up to the passage of the 1976 Act. *See* Register's Rep. on the Gen. Revision of the U.S. Copyright Law 67 (1961) ("Impounding and destruction are extraordinary remedies.").

1  Register's Rep. on the Gen. Revision of the U.S. Copyright Law 45 (1961) (stating that the
2  "remedies available against copyright infringers . . . include . . . the impounding and
3  destruction of infringing articles); *id.* (proposing that where a copyright has not been
4  registered within a prescribed period of time, a court should have discretion to "order the
5  impounding and destruction of infringing articles, but only on condition that the infringer be
6  fully reimbursed for his outlay").  A House of Representatives committee print discussing
7  proposed revisions to the 1909 Act states that Congress meant for § 503(a) to "retain[] the
8  substance" of the old § 101(c) with only minor changes in detail, none of which concern the
9  type of defendant against whom impoundment may be imposed. *See* Supp. Register's Rep.
10 on the Gen. Revision of the U.S. Copyright Law 133 (1965).

11       Plaintiff argues, however, that the 1976 Act reversed the settled rule and permits the
12 impoundment of infringing articles even in the hands of non-infringing persons.  17 U.S.C.
13 § 503(a), which replaced 17 U.S.C. § 101(c) of the 1909 Act, reads:

> At any time while an action under this title is pending, the court may order the impounding, on such terms as it may deem reasonable, of all copies or phonorecords claimed to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced.

18 The purpose of the statute is to "maintain the feasibility of the eventual destruction of items
19 found at trial to violate the copyright laws by safeguarding them during the pendency of the
20 action." *Midway Mfg. Co. v. Omni Video Games, Inc.*, 668 F.2d 70, 72 (1st Cir. 1981). On
21 cursory reading, the text is conceivably open to Plaintiff's interpretation.  The phrase, "on
22 such terms as [the court] may deem reasonable," for example, imports considerable
23 discretion.  Section 503(a) of the current act also lacks the words "such person" who "shall
24 infringe the copyright" that confirmed the remedy's limits under the 1909 Act.[4]  The
25 adoption of such an interpretation, however, would greatly expand the scope of the

---

[4] For further discussion on the differences between § 101(c) and § 503(a), see Raoul Anthony Renaud, *Pretrial Remedies in Infringement Actions: The Copyright Holder's Impound of Flesh?*, 17 Santa Clara L. Rev. 885, 892-93 (1977).

- 6 -

impoundment remedy. For the reasons discussed below, that expansive interpretation of § 503(a) is unpersuasive.

### A.     Statutory Construction

Most importantly, Plaintiff's interpretation fails because it is inadequately supported by the text of § 503(a). The first sentence of the statute provides that impoundment may be ordered "[a]t any time while an action under [Title 17] is pending." *Id.* Given that Title 17 concerns actions for copyright infringement, this language plays the same role in the 1976 Act that the words "such person" played in § 101(c) of the 1909 Act. The quoted language in each statute weighs against impoundment involving non-infringers by closely connecting the impoundment remedy with the infringement cause of action. If Congress had intended for impoundment to be available against non-infringers, the statute would have permitted impoundment regardless of whether an action for infringement is pending.

This interpretation harmonizes § 503(a) with other provisions in the Copyright Act of 1976. No other statutory remedies are given against persons who are not otherwise liable for infringement. For example, 17 U.S.C. § 502 provides for injunctive relief "to prevent or restrain infringement of a copyright." While the issuance of an injunction is a matter of judicial discretion, such relief is not granted where the addressee of the injunction has not violated the plaintiff's copyrights and is not likely to in the future. *See, e.g.*, *Broadcast Music., Inv. v. Fox Amusement Co.*, 551 F. Supp. 104, 110 (N.D. Ill. 1982). Where there is not a threat of infringement by the defendant, the remedy cannot be said to "prevent or restrain infringement." Other remedies are even more explicitly predicated on the liable individual's act of infringement. *See* 17 U.S.C. § 504(a) (providing that "an infringer" of copyright is liable for either the copyright owner's actual damages or statutory damages); 17 U.S.C. § 506(a) (providing criminal penalties for "[a]ny person who willfully infringes a copyright"); 17 U.S.C. § 509(a) (providing seizure and forfeiture remedies against an individual liable under 17 U.S.C. § 506). While attorney's fees and costs under 17 U.S.C. § 505 are not limited in express words to infringing parties, they are so limited in practice. A defendant's liability for infringement substantially determines the propriety of an award

under § 505. *McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 323 (9th Cir. 1987); *Dollcraft Indus., Ltd. v. Well-Made Toy Manuf. Co.*, 479 F. Supp. 1105, 1118 (E.D.N.Y. 1978); 4-14 Nimmer on Copyright § 14.10 at n.62.

Canons of statutory construction also support the restriction of § 503(a) impoundment to infringers. Generally speaking, an "amendatory act is not to be construed to change the original act or section further than expressly declared or necessarily implied." 1A Norman J. Singer, Sutherland Statutory Construction § 22.30, at 267 (5th ed. 1992). The 1976 Act focuses exclusively on the nature of the items that permissibly may be impounded. There is no express discussion or necessary implication that works possessed by non-infringing parties fall within the scope of the remedy. The words of § 503(a) are thus ill-suited to expand greatly the scope of the impoundment remedy and to reverse a settled rule under the 1909 Act. *See* 4 Nimmer § 14.07, at 14-160 ("It seems unlikely . . . that any substantive change [with § 503(a)] was deliberate. Congress can scarcely have intended, for example, that everyone who has purchased and has on his home library shelf a copy of a plagiarizing novel becomes liable to surrender such copy under the impounding provisions.").

Finally, the legislative history lacks any indication that Congress intended to allow plaintiffs to impound infringing works purchased by non-infringing parties. The words "such person" were left out of every draft of the current statute. *See* S. 3008, 88th Cong. § 37 (1964); H.R. 4347, 89th Cong. § 37 (1st Sess. 1965); H.R. 4347, 89th Cong. § 37 (2nd Sess. 1966); H.R. 2512, 90th Cong. § 37 (1967); S. 543, 91st Cong. § 37 (1969); S. 644, 92nd Cong. § 37 (1971); S. 1361, 93rd Cong. § 37 (1st Sess. 1973); S. 1361, 93rd Cong. § 37 (2nd Sess. 1974); S. 22, 94th Cong. § 37 (1st Sess. 1975); S. 22, 94th Cong. § 37 (2nd Sess. 1976).[5] The House and Senate Reports on the 1976 Act do not address the issue. *See* S. Rep. No. 94-473 (1975); H.R. Rep. No. 94-1476 (1976). It is hard to imagine that Congress would

---

[5] For a general discussion on the legislative history of the 1976 Act, see Julius J. Marke, *United States Copyright Revision and its Legislative History*, 70 Law Libr. J. 121 (1977).

have drastically departed from a significant historical limitation on impoundment without any discussion whatsoever.

### B. Judicial Application of 17 U.S.C. § 503(a)

Judicial application of § 503(a) also casts doubt on the notion that impoundment may be ordered against innocent purchasers. The cases uniformly employ the remedy only against infringers. *See, e.g.*, *Nintendo of Am. v. Computer & Entm't*, 1996 U.S. Dist. LEXIS 20975, at *14 (W.D. Wash. May 31, 1996) (ordering impoundment in these circumstances); *Demetriades v. Kaufmann*, 680 F. Supp. 658, 666 (S.D.N.Y. 1988) (ordering the impoundment of all infringing copies within the infringing defendant's control); *Ford Motor Co. v. B & H Supply, Inc.*, 646 F. Supp. 975, 990-91 (D. Minn. 1986) (ordering only the defendants who were liable for infringement to forfeit infringing items "in their possession or within their control"); *Cassidy v. Bowlin*, 540 F. Supp. 901, 905 (W.D. Mo. 1982) (ordering the impoundment of infringing items "under the control of or which [could] be reasonably obtained by the defendants" who were liable for infringement); *Martin Luther King, Jr. Ctr. for Soc. Change, Inc. v. Am. Heritage Prods., Inc.*, 508 F. Supp. 854, 861 (N.D. Ga. 1981) (ordering the impoundment of infringing items within the "possession or control" of the infringing defendant), *rev'd on other grounds*, 694 F.2d 674 (11 th Cir. 1983); *Nat'l Research Bureau, Inc. v. Kucker*, 481 F. Supp. 612, 615 (S.D.N.Y. 1979) (declining as impractical a request to order the recall of infringing books purchased by non-infringing customers of the defendant); *Dollcraft Indus.*, 479 F. Supp. at 1118 (ordering the allegedly infringing defendants to deposit with the U.S. Marshal infringing items which were "in their possession, under their control, or which [could] be obtained by them through reasonable efforts"); Paul S. Owens, *Impoundment Procedures Under the Copyright Act: The Constitutional Infirmities*, 14 Hofstra L. Rev. 211, 220 (1985) (explaining that, under the 1976 Act, "courts have generally followed the case law under the 1909 Act and have only ordered impoundment of infringing articles actually under defendant's possession and control"); *see also* Fed. R. Civ. P. 65 advisory committee's note on 2001 amendments (discussing concerns that notice of impoundment may enable an "infringer" to defeat the

- 9 -

court's capacity to grant effective relief).  While none of the cited cases provide any substantial analysis of § 503(a), their dispositions reveal a pattern of limited discretion that is inconsistent with Plaintiff's interpretation of the statute.  *See also Paramount Pictures Corp. v. Doe*, 821 F. Supp. 82, 86, 89 (E.D.N.Y. 1993) (explaining that impoundment must be necessary, reasonable, and comport with the requirements of due process).

At times, innocent purchasers have been subject to judicially mandated recalls administered by infringing defendants. In *Yamate USA Corp. v. Sugerman*, 1991 U.S. Dist. LEXIS 20701 (D.N.J. Mar. 5, 1991), for example, impoundment was ordered with regard to infringing video games within the possession or control of the infringing defendants.  To the extent that the games had already been sold to customers not liable for infringement, the defendants were required to make reasonable efforts to recall them.  *Id.* at *46.  However, *Yamate* and other cases taking this approach did not apply § 503(a) in relation to the customers or order them to cooperate with the defendant's recall.  *Id.*; *see also Fisher Price Toys v. My-Toy Co.*, 385 F. Supp. 218, 223 (S.D.N.Y. 1974) (ordering the defendant to make a "diligent effort" to recall the infringing items from its customers).  Given that the impoundment order Plaintiff seeks would be legally binding on Defendant Lindquist, *Yamate* and *Fisher Price* are distinguishable as employing a remedy not imposed on non-infringers directly.

In summary, Plaintiff's interpretation of 17 U.S.C. § 503(a) is incorrect; the statute does not permit the impoundment of infringing items in the hands of innocent purchasers who are not themselves liable for infringement.  Count III will be dismissed with prejudice.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (Doc. #13) is GRANTED to the extent that Count III of the Amended Complaint (Doc. # 12) is dismissed with prejudice.

DATED this 3rd day of November 2006.

_____
Neil V. Wake
United States District Judge